UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF OKLAHOMA

---

Pedro Gutierrez,

vs.

John B. Fox, Warden;
Scott Young, Warden;
T. Carter, Assistant Warden;
D. Cogburn, Lieutenant;
T. Kirby, Correctional Services officer; D. Holston, Chaplain;
et.al.

---

FILED
JUN 0 5 2020
CARMELITA REEDER SHINN
CLERK, U.S. DISTRICT COURT
BY_____
DEPUTY

MOTION FOR PRELIMINARY INJUNCTION BY ORDER OF MANDAMUS

---

Pedro Gutierrez, the petitioner herein seeks judicial intervention by filing and submiting this motion for preliminary injunction by order of mandamus as all the parties in the above caption willingly and knowingly continue to deprive the petitioner the right to practice his religion as guaranteed and secured by the United States Constitution First, Fifth, and Fourteenth Amendments. The petitioner will demonstrate to this court the events that has lead to the religious discrimination that petitioner has been subjected to and continues to endure. It is the petitioners desire that this court will resolve and remedy the injustice which has affected the petitioner in a profound manner. Petitioner therefore asks this court for it's judicial intervention

1

in compelling all parties to adhere to the laws of the U.S. Constitution, statutes, etc.

## STATEMENT OF FACTS

1. The petitioner is a practitioner of the Yoruba/Lukumi/Santeria/Orisha faith, herein "Santeria."

2. Petitioner was transfered from United States Penitentiary Coleman-1 on March 10, 2020 designated to be transfered to the Administrative Max (ADX) prison in Florence Colorado. During petitioners time at USP Coleman-1 Special Housing Unit (SHU), which petitioner remained for a duration of 17-months, petitioner at all times possessed 9-strands of multi-colored beads, and 1-gold chain with medallion pertaining to the Santeria religion.

3. Religious necklaces were transported with petitioner when he arrived at the Federal Transfer Center in Oklahoma City Oklahoma, on March 10, 2020

4. A memorandum accompanied petitioners religious necklaces which states: To: All concerned, Subject: Religious Necklace to transport to Destination; The following procedure will be utilized for transporting the religious necklace of Gutierrez, Pedro Register #33580058: 1. Religious necklaces with

2

9 strands of multi-Santeria colored beads, 1 gold chain with 1-medallion will be secured in a ziploc bag in a box labeled with Name and Register Number and description and the box will be handed to the receiving Transport Agency.

5. The petitioner upon being processed in the receiving and discharge (R&D) area inquired as to his religious necklaces to correctional Services officer (CSO) T. Kirby. CSO T. Kirby went to the storage area in R&D and brought the box containing religious necklaces to petitioner and asked petitioner were these the necklaces, petitioner answered yes. CSO T. Kirby opened the box read the memo and then said the chaplain will have to give them to me.

6. Petitioner was brought up to the SHU at FTC Oklahoma city due to his ADX status. Note: At all times petitioner remained at SHU's in USP Atlanta, and USP Coleman-1, (were not for disciplinary reasons), but was for administrative reasons due to pending ADX referal.

7. On March 11, 2020 petitioner spoke with LT. D. Cogburn during his rounds in SHU and brought the issue concerning religious necklaces to LT. D. Cogburn's attention. Petitioner stressed the significance of possessing and wearing of the religious necklaces which is a tenet of Santeria, and that the necklaces serve for the

purpose of protection and the worship of the Orishas. Petitioner requested that L.T. D. Cogburn retrieve said necklaces from R&D so that the necklaces can be worn and petitioner can practice his religious faith without any hindrance. Petitioner further explained there is a memorandum attached with the necklaces which stipulates the procedure utilized in handling the necklaces. L.T. D. Cogburn stated he can not do nothing and suggested petitioner go through the chaplain D. Holston.

8. On March 13, 2020 the Federal Bureau of Prisons (BOP) issued a memorandum suspending all inmate movement/transfers due to the Covid-19 pandemic therefore extending petitioners stay at FTC Oklahoma city.

9. Petitioner met and spoke with Chaplain D. Holston on March 16, 2020 in regards to my religious necklaces. Petitioner requested to access and possess necklaces and informed Chaplain D. Holston that the necklaces were in R&D storage. The Chaplain said he would look into it and decide if petitioner can have the necklaces.

10. Chaplain D. Holston met with petitioner on March 24, 2020 and stated to petitioner that he nor the BOP recognizes petitioner's religion and the chaplain wasn't going to allow petitioner to access and possess

4

necklaces. At the time that Chaplain D. Holston stated this to petitioner SHU LT. D. Cogburn was making his rounds and heard the chaplain when he made such statement to petitioner. Petitioner, called LT. D. Cogburn over to his cell to speak with him regarding what the chaplain just stated to petitioner. LT. D. Cogburn told petitioner he could not do anything that it was a matter for the chaplain.

11. On March 27, 2020 petitioner spoke with Warden John B. Fox (now retired) about everything that transpired between petitioner and Chaplain. Petitioner expressed that he was being discriminated against due to his religious beliefs of Santeria. Assistant Warden T. Carter and LT. D. Cogburn were present with Warden John B. Fox. Petitioner then informed Warden Fox that LT. Cogburn was present at the time Chaplain Holston made discriminatory comments about petitioners religion and if LT. Cogburn was a man of integrity Warden Fox can ask LT. Cogburn and he will substantiate what Chaplain Holston had said. Warden Fox said to allow assistant Warden Carter to look into petitioners matter of his religious necklaces, and what Chaplain Holston had stated about petitioners religion. Warden Fox told petitioner chaplain Holston should not have said that.

Petitioner stated to Warden Fox that his religion is listed as Santeria in the BOP Sentry computer system. And that the BOP allows Santeria adherents to participate every year in a ceremonial meal on June 13. Warden Fox said to petitioner he is aware of the Santeria ceremonial meal and that the BOP recognizes Santeria and he personally has dealt with prisoners whom practiced Santeria at other facilities.

12. Petitioner sent several letters, (about 5-total), to Assistant Warden T. Carter explaining everything regarding petitioners necklaces and what the chaplain had stated regarding petitioners religion. These letters were sent between the months of March and April 2020.

13. On April 3, 2020 Assistant Warden T. Carter spoke with petitioner during rounds and told the petitioner that he would not allow the petitioner to possess/access necklaces and stated that his decision was final.

14. On April 17, 2020 petitioner filed an informal resolution attempt form against Chaplain D. Holston for religious discrimination against petitioner. In the complaint the petitioner stated that he spoke to Warden John B. Fox and Assistant Warden T. Carter to resolve complaint. Petitioner also stated the action he requested to resolve complaint was to be given access to his necklaces so that

6

the petitioner can practice his religion free from discrimination.

15. On April 28, 2020 petitioner spoke with Chaplain D. Holston during rounds and asked did he receive a phone call pertaining to petitioners necklaces. The chaplain then stated: "I don't care if Donald Trump called me you're not getting your necklaces."

16. On May 2, 2020 petitioner spoke with the new Warden Scott Young, who succeeded his predecesor John B. Fox, about petitioners necklaces and the problem petitioner has been subjected to as being a victim of religious discrimination by Chaplain D. Holston. Warden Young advised petitioner to write him an inmate request and he would look into the matter, but that he wouldn't promise anything.

17. Petitioner received a response to inmate request to staff member from Warden S. Young dated 5-13-2020. (See attached Inmate request dated 5-2-2020 and response to inmate request dated 5-13-2020).

18. On May 22, 2020 Warden S. Young made a round. Petitioner stopped Warden Young to speak with him concerning Warden Young's response to inmate request to staff member dated 5-13-2020 concerning petitioners religious

7

necklaces. Petitioner pointed out that the program statement he cites in his response does not apply to petitioner because petitioner has a memorandum regarding the special handling and procedure utilized regarding religious necklaces during transport. Additionally petitioner circumstances were altered due to the covid-19 pandemic where petitioners stay at the Federal Transfer has been extended. And as petitioner pointed out he is not in SHU for disciplinary reasons. Petitioner is in SHU for administrative reasons. Petitioner cited the BOP program statement for all SHU's regarding Administrative Detention inmates personal property where it states an inmate may possess a chain and religious medallion, etc. The petitioner has a gold chain and medallion which depicts santeria religious icons on both sides. Petitioner made Warden Young aware that his response to inmate request was discriminatory in nature especially the part were Warden Young in conclusion states: "As a least restrictive alternative, the chaplain may provide rosary beads to meet your stated religious needs." Petioner told warden Young that he wants to provide the petitioner with rosary beads that is not related to petitioners religious beliefs, but will not allow the petitioner to possess his own Santeria beads? The petitioner also expressed to Warden Young that he is being discriminated against because of his particular religious beliefs when Jewish

prisoners at the Federal Transfer Center are allowed to possess a tallit, tallit katan and tefellin to practice and worship. Warden Young stated to petitioner: "I'm not allowing you to have your necklaces, the only way I'll give them to you is if a court orders me to do so." Now the petitioner comes to the court to seek judicial intervention in this matter by requesting preliminary injunction.

## LEGAL ARGUMENT

The petitioner herein presents his legal argument before this court. But before doing so the petitioner will give a brief historical overview of the religion of Santeria and what the beads (religous necklaces) known as collares/elekes/ilekes mean and the religious significance it holds for the petitioner. The petitioner will cite references to elucidate and support his argument. "Among the Euro-speaking colonies, religious sects known as Santeria in Puerto Rico, Candomble in Brazil, Shango in Trinidad, Voodun in Haiti, and Lucumi in Cuba were formed. The Euro-influences, although great, could not deter the African descendants from secretly maintaining their tradition. Even the language of the Yoruba remained, as did cultural mannerisms." "Because of political struggles, especially in the 1950's, New World people from the Caribbean found their way to the United States.

They were mainly from Cuba, which is often called "little Africa." The Cubans brought with them the Yoruba religion and practice as they had interpreted it." (see The HandBook of Yoruba Religious Concepts pg. 6). "Though commonly known as Santeria, insiders often refer to the religion as La Regla Ocha (The Rule of the Orichas), or La Regla Lucumi (The Rule of the Lucumi), sometimes shortened to simply Ocha or Lucumi. Lucumi was originally the term used in Cuba to describe the West Africans now known as the Yoruba. Later it became used to denote the culture, language, and religion as it was preserved and evolved in Cuba." (see Babalawo Santeria's High Priests: Fathers of The Secrets In Afro-Cuban IFÁ, by Frank Baba Eyiogbe pg. 1 foot note). "Santeria was born in Nigeria, along the banks of the Niger River. This is the country of origin of the Yoruba people, many of whom, along with members of other African tribes, were brought to the New World by slave traders over four centuries ago. The Yoruba brought with them the colorful mythology of their religion, known in Cuba as lucumi and in Brazil as Macumba and Candomblé." "Santeria is an earth religion, a magico-religious system that has its roots in nature and natural forces. Each orisha or saint is identified with a force of nature and with a human interest or endeavor." (see Santeria: The Religion, by Migene Gonzalez-Wippler pgs. 1 and 4). "Receiving the Ilekes: Ilekes are the religious beads that mark the first level of actual commitment made by the novice. Five ilekes are presented ceremoniously

to the initiate. Each ileke represents an orisha: white—Obatala; black and red—Elegba; yellow—Oshun; blue—Yemoja; red and white—Shango. The ilekes are consecrated by the presiding priest/priestess. Ewe (herbs), ebo (sacrificial blood), and efun (sacred earth) are made into a solution (omi ero). The ilekes are washed in the solution and are now consecrated. They now have the ashe, which will empower the devotee with the essence of the orisha. (see The Handbook of Yoruba Religious Concepts, by Baba Ifa Karade pg. 100). "Eleke, ileke: Bead necklace (collar in Spanish). Also an initiation performed by iworos and not babalawos. The initiation and necklaces put the person under the care and protection of the iworo's orichas. The iworo then becomes the godparent of the eleke's initiate, and they are formally a member of the iworo's ile." "Iworo: An oricha priest. Also refered to as an oloricha or santera/o." "Ile: House. Used to denote an oricha house where an iworo or babalawo live and work as well as the religious family itself." (see Babalawo Santeria's High Priests: Fathers of The Secrets In Afro-Cuban Ifá, by Frank Baba Eyiogbe pgs. 203 and 205 glossary). "Santeria is based largely on a progressive system of initiations by means of which the neophyte gains not only the protection of the orishas, but also increasing knowledge of the various practices and beliefs of the religion. The first two of these initiations are the Necklaces (collares or elekes) and the Warriors. The Necklaces are

five strands of beads in the colors of the five major orishas. They are given as protection against all forms of evil." "The omiero is used for many ritual purposes. During the investment of the Necklaces." "Santeros say that the necklaces are the banners of the saints, with which they protect their followers. Each necklace confers upon its wearers the blessing of the orisha it represents and helps him in those areas controlled by the orisha. After the first five necklaces have been received, the initiate may get other necklaces from other orishas, as he needs them." "The necklaces are not given to acquire money or for personal aggrandisement. They are given for protection against evil. People who have received the necklaces are expected to respect the orishas and to observe decent and moral behavior." (see Santeria: The Religion, by Migene Gonzalez-Wippler pgs. 16, 23, 165, and 166).

The petitioner in this action has been discriminated against by all parties werein constitutional/statutory violations of religious discrimination of petitioners beliefs were and continue to be committed creating a substantial burden on petitioners right to religious exercise by denying petitioner the wearing of his religious necklaces. Deprivation of petitioners wearing of beads interferes with his right to freely practice his religion, i.e. Santeria. The wearing of religious necklaces (ilekes/elekes/collares) in Santeria

is motivated by indisputably sincere religious beliefs and denying petitioner access to wearing his religious necklaces infringes upon petitioners right under the **First Amendment** to free exercise of his religion. Denying petitioner the wearing of his religious necklaces interfered with the free exercise of petitioners religion in violation of the First Amendment of the United States Constitution.

The right to liberty is guaranteed by the Fourteenth Amendment denotes a freedom to worship God according to the dictates of ones own conscience, as well as the right to petition the courts for redress.

Petitioners placement in SHU does not standing alone, justify or preclude him from a complete denial to practice his religion. It is improper to deny a prisoner access and possession of his religious necklaces based on the prisoners placement in SHU administrative detention/hold over status.

The parties herein have created a substantial burden of paramount proportions by their deliberate acts of religious discrimination against petitioner by denying him the free exercise of his religion. In *Gittlemacker v. Prasse* 428 F.2d 1 (3d Cir 1970), the First Amendment of religious freedom to prisoners is pointed out:

"This may be rationalized on the basis that since society has removed the prisoner from the community where he could freely exercise his religion, it has an obligation to furnish or supply him with the opportunity to practice his faith during confinement. Thus, the Free Exercise Clause is satisfied."

The petitioner has a significant right to the free exercise of his religious beliefs. Explicit in the First Amendment are two seperate and distinct concepts designed to guarantee religious liberties: (1) the establishment clause, and (2) the free exercise clause.

The cases dealing with religious freedom frequently refer to the equal protection clause of the Fourteenth Amendment. Section 1 of that amendment provides in part that: "Nor shall any state... deny to any person within its jurisdiction the equal protection of the laws."

A prisoner was prevented from meeting with his minister, from wearing his Celtic cross, and from participating in communal religious services while in segregation. This was a substantial burden on his right to his religious exercise, (citing Rowe v. Davis, 373 F.Supp. 2d 822 (N.D. Ind. 2005)).

Petitioner herein continues to be subjected by the parties deliberate acts of religious discrimination which has infringed upon the free exercise of petitioners religious beliefs, i.e. Santeria, in violation of constitutional and statutory law. The remedy petitioner seeks to obtain is a District Court injunction barring the enforcement of the policy against petitioner. Any policy is subject to challenge at any time by any individual who claims a substantial burden on his or her free exercise of religion.

The Religious Land use and Institutionalized Persons Act (RLUIPA) which congress enacted continues to be violated by prison officials. The statute of the RLUIPA provides:

"No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution."

By it's terms, the RLUIPA is to be construed to broadly favor protection of religious exercise. The statute defines religious exercise as "any exercise of religion, whether or not compelled by, or central to, a system of religious belief."

The RLUIPA allows injunctive or declaratory relief.

In general, courts intervene in the correctional administrative process under three circumstances:

1. The statute or policy under which the prison administrator is acting is unconstitutional or unconscionable;

2. The act of the prison administrator is outside the scope of his authority, or *ultra vires*; or

3. The procedure used by the prison administrator in decisions affecting the status of a prisoner falls below minimum requirements of due process.

The judicial process is essential in the American system of governmental checks and balances, and in dealing with specific issues calling for the finding of facts and the application of law or policy.

Unfortunately, history has shown that many prisons are characterized by the presence of unnecessary discretionary power, resulting in the danger of its abuse and judicial intervention.

The act of religious discrimination against the petitioner by prison officials has caused an injustice. This injustice results from an act in which personal bias, prejudice, and

disregard of law and policy play the predominant motive. The result is judicial intervention.

Wherefore the petitioner seeks immediate injunctive relief from the court.

In conclusion, we must be guided by the old adage that unrestricted discretion, like corruption, marks the beginning of the end of liberty.

Respectfully submitted,
Pedro *[signature]*

Dated: June 2, 2020

Pursuant to 28 U.S.C. §1746 the petitioner swears under penalty of perjury that the foregoing is true and correct.

CERTIFICATE OF SERVICE

The Petitioner Pedro Gutierrez being duly sworn deposes and says that he resides at Federal Transfer Center Oklahoma City P.O. Box 898801 Oklahoma City, OK. 73189-8801 and that on this 2nd day of June 2020 he deposited in a United States Mail box through a prison official the following papers 1.) Motion for Preliminary Injunction By Order of Mandamus, and 2). Affidavit IN Support, 3.) Certificate of Service. Addressed to: Clerk of the Court William J. Holloway Jr. U.S. Dist. Court Western Dist. of Oklahoma 200 N.W. 4th Street Oklahoma City, OK. 73102-3092

Respectfully Submitted,

/s/ Pedro

Dated: June 2, 2020

Pursuant to 28 U.S.C. §1746 the petitioner swears under penalty of perjury that the foregoing is true and correct.